UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **STEVEN DUPLECHAIN, III** | **CIVIL ACTION NO.: 6:15-CV-02433** |
| | **JURY TRIAL REQUESTED** |
| **VERSUS** | |
| | **JUDGE: REBECCA DOHERTY** |
| **MICHAEL W. NEUSTROM, individually and in his official capacity as the duly elected SHERIFF OF LAFAYETTE PARISH; ROB REARDON, individually and in his official capacity as the LAFAYETTE PARISH SHERIFF'S OFFICE DIRECTOR OF CORRECTIONS; LAFAYETTE CONSOLIDATED GOVERNMENT; LESTER JOSEPH "JOEY" DUREL JR., in his official capacity as the duly elected City-Parish President for LAFAYETTE CONSOLIDATED GOVERNMENT; HANNAH GIRRENS; individually and in his official capacity as a Deputy Sheriff for the LAFAYETTE PARISH SHERIFF'S OFFICE; KANAN DAIGLE, individually and in his official capacity as a Deputy Sheriff for the LAFAYETTE PARISH SHERIFF'S OFFICE; ANGELA MARIE DARBY; TRE'VIN BOB and DEANGELO CELESTINE** | **MAGISTRATE: CAROL WHITEHURST** |

### COMPLAINT FOR DAMAGES

TO THE HONORABLE, THE UNITED STATES DISTRICT COURT IN AND FOR THE WESTERN DISTRICT OF LOUISIANA:

#### INTRODUCTION

Defendant's motion for dismissal is premature and should have been urged in summary judgment, rather than a dismissal on the pleadings based on qualified immunity or failure to state a claim. Indeed, qualified immunity does not unequivocally protect public officials and to overcome a motion to dismiss, plaintiff need only plead facts to show that defendants were

1

deliberately indifferent to plaintiff's clearly established constitutional right. Since this is not summary judgment, this memorandum concludes that clear factual allegations were pled with specificity in the Complaint. Since this is the motion to dismiss stage, as stated by the US Supreme Court, "a judge assumes "that all the allegations in the complaint are true (even if doubtful in fact)."[1]

The initial pleading includes many pages of factual details, statistical evidence, and thorough allegations which overcome the motion to dismiss for failure to state a claim. Throughout the entire Complaint, plaintiff alleges with specificity that all of the defendants have unequivocally failed to protect the prisoners at Lafayette Parish Correctional Center. Should any further facts be required to clarify allegations, plaintiff respectfully requests the opportunity to amend the Complaint.

Furthermore, plaintiff pled facts to allege a violation of plaintiff's constitutional rights under the Fourteenth Amendment. It is well-established that the analysis for pretrial detainees alleging cruel and unusual punishment is guaranteed under the Fourteenth Amendment yet analyzed under the Eighth Amendment.

The Eighth Amendment imposes a duty to protect prisoners from violence at the hands of other inmates.[2] The city-parish president, as the administrator of funds and policy, has been deliberately indifferent to long-standing and "excessive risks to inmate health or safety" and disregarded those risk.[3] The continuous deliberate indifference to numerous aspects of the jail, have amounted to the excessive risk. A plaintiff can rely on circumstantial evidence indicating that the official must have known about the risk.[4]

---

[1] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 589, 127 S. Ct. 1955, 1984-85, 167 L. Ed. 2d 929 (2007)
[2] Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003).
[3] Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
[4] See Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002).

**MOTION TO DISMISS STANDARD**

Regarding the Defendant's Rule 12(b)(6) Motion to Dismiss for failure to state a claim, the United States Supreme Court has clearly set forth that the Plaintiff need only set forth facts for which a claim for relief can be granted. The Defendant's arguments which focus on dismissal based on qualified immunity are plainly premature. Plaintiff has specifically alleged constitutional violations which are recognized by the Fifth Circuit and Supreme Court of the United States, as well as that the defendants committed deliberate indifference to the plaintiff's clearly established rights.

Federal Rule of Civil Procedure 8(a)(2) states that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court stated in the case of *Twombly* that "detailed factual allegations are not required."[5] The Plaintiff stated in his pleadings that he notified the Defendant that he would take action and wanted the video evidence preserved. Whether or not that is sufficient to constitute notice is a question for summary judgment, not dismissal on the pleadings.

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.[6] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[7] "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not the plaintiff pleads itself out of court."[8] When there are well-pleaded factual allegations, a court should assume

---

[5] Twombly, 127 S.Ct. at 1964-65 & 1973 n. 14.
[6] Cantwell v. City of Gretna, No. CIV. A. 06-9243, 2007 WL 4256983, at *2 (E.D. La. Nov. 30, 2007).
[7] Id.; In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2007) (quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14, 167 L.Ed.2d 929 (2007)).
[8] E.E.O.C. v. Concentra Health Services, Inc., 496 F.3d 773, 777 (7th Cir.2007).

their veracity and then determine whether they plausibly give rise to an entitlement to relief.[9]

Throughout this memorandum, plaintiff quotes specific instances in its Complaint which stipulate factual allegations sufficient to overcome a Motion to Dismiss for failure to state a claim.

## LAW & ARGUMENT

Plaintiff's allegations must meet the burden set forth in Rule 8 of the Federal Civil Procedure Rules in order to state a claim. Rule 8 of the Federal Rules of Civil Procedure asserts that "A pleading that states a claim for relief must contain: . . . . "A short and plain statement of the claim showing that the pleader is entitled to relief." It is improper to conduct a summary judgment analysis at this time regarding qualified immunity. The focus should be on whether or not Plaintiff has reasonably alleged sufficient facts to demonstrate the elements of a cause of action rather than whether or not Plaintiff can produce sufficient evidence to prove its case.

1. **Qualified Immunity**

All of defendant's qualified immunity arguments are premature. Qualified Immunity is an issue for summary judgment, not 12(b)6 dismissal. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general factual allegations embrace those specific facts that are necessary to support the claim.' "[10] Throughout a lengthy complaint, plaintiff pled abundant factual allegations that the defendants are not entitled to qualified immunity based on their actions and the violation of federal rights.

---

[9] Ashcroft v. Iqbal, 556 U.S. 662, 663-64, 129 S. Ct. 1937, 1940-41, 173 L. Ed. 2d 868 (2009).
[10] Id. (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990)). As cited in Southern Christian Leadership Conference v. Supreme Court of State of Louisiana, 225 F.3d 781, 788 (5th Cir (La.) 2001).

4

Ultimately, plaintiff must allege two elements: 1) that a federal right was violated and 2) that the right was clearly established.[11] Plaintiff alleged specifically a failure to protect claim in association with the Eighth Amendment. Failure to protect is a clearly established federal right and plaintiff alleges multiple times that it was violated.

In 2014, the United States Supreme reversed and remanded a Fifth Circuit Court of Appeals case rearticulated the standard for qualified immunity protection. In that case, the qualified immunity argument was brought in summary judgment.

In that case, Robert Tolan was shot on his parents' driveway by police sergeant Jeffrey Cotton. Tolan sued alleging that Cotton had exercised excessive force in violation of the Fourth Amendment. The District Court granted summary judgment, holding that even if Cotton's conduct violated the Fourth Amendment, Cotton was entitled to qualified immunity because he did not violate a clearly established right.[12] The Fifth Circuit affirmed. But the US Supreme Court vacated that decision reasoning that on a motion for summary judgment the court may not resolve genuine issues of fact in favor of the moving party or resolve disputed facts by defining the circumstances for the purpose of qualified immunity. "Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," the Court ruled, adding that "a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[13]

The disputed facts and inferences must be viewed in a light most favorable to the citizen making the claim, regardless of qualified immunity.[14] *Tolan* represented the first time in over ten years that the Supreme Court has ruled against a police officer in a qualified immunity case (*Hope*

---

[11] Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
[12] Id.
[13] 134 S.Ct. 1861, 188 L. Ed. 2d 895 (2014).
[14] Id. at 1863.

5

*v. Pelzer* and *Groh v. Ramirez* were the most recent previous occasions, from 2003 and 2004).[15]

The standard was recently applied again by the Fifth Circuit to the facts in the case of *Dawson v. Anderson Cnty., Tex*.[16] In *Dawson*, the plaintiff was arrested, brought to jail, and asked multiple times to "squat and cough" while undressed to determine whether she had secret contraband hidden in a cavity. The defendants testified that she refused to cooperate so they shot her with a pepperball gun. The plaintiff however testified that she complied with the initial command then refused the subsequent demands. The Fifth Circuit stated, "[a]s we must view the facts in the light most favorable to Dawson, we must assume she did comply with the initial command. Assuming Dawson complied, a jury could infer that the jailers were not concerned about safety at all but rather were issuing unreasonable orders for sport." In that case, the Fifth Circuit asserted that summary judgment based on qualified immunity was improper.

The Federal Court for the Western District of Louisiana has articulated the roadmap for the analysis of qualified immunity at summary judgment. An even stronger argument exists at the stage of dismissal on the pleadings alone. Quoting *Tolan v. Cotton*, this Court stated:

> In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right [.]" ... When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures....The inquiry into whether this right was violated requires a balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' "
>
> ...
>
> The second prong of the qualified-immunity analysis asks whether the right in

---

[15] Will Baude, When the Supreme Court Should Intervene in Factbound Cases, The Washington Post, May 7, 2014, http://www.washingtonpost.com/news/volokh-conspiracy/wp/2014/05/07/tolan-v-cotton-when-should-the-supreme-court-interfere-in-factbound-cases/
[16] 769 F.3d 326, 327-28 (5th Cir. 2014).

question was "clearly established" at the time of the violation.... Governmental actors are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " ... "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional."

...

Courts have discretion to decide the order in which to engage these two prongs.... But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment ... This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." ... Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." ... In making that determination, a court must view the evidence "in the light most favorable to the opposing party."

...

Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard. In cases alleging unreasonable searches or seizures, we have instructed that courts should define the "clearly established" right at issue on the basis of the "specific context of the case." ... Accordingly, courts must take care not to define a case's "context" in a manner that imports genuinely disputed factual propositions. See *Brosseau,* supra, at 195, 198, 125 S.Ct. 596 (inquiring as to whether conduct violated clearly established law " 'in light of the specific context of the case' " and construing "facts ... in a light most favorable to" the nonmovant).[17]

---

[17] Tolan v. Cotton, 134 S.Ct. 1861, 1865–1866, (May 5, 2014) (citations omitted). Robertson v. Town of Washington, No. 13-CV-3020, 2015 WL 1564888, at *8-9 (W.D. La. Apr. 6, 2015).

## 2. Eighth Amendment Analysis Via Due Process

Plaintiff specifically mentions in its cause of action that the Eighth Amendment claims full under the Fourteenth Amendment for due process. Plaintiff's Complaint states: **COUNT FOUR: 42 U.S.C. § 1983 FAILURE TO PROTECT & CRUEL AND UNUSUAL PUNISHMENT** (Eighth and Fourteenth Amendment Claim Against Michael W. Neustrom, Rob Reardon, Lester Joseph "Joey" Durel, Jr., Lafayette Consolidated Government and Kanan Daigle)." Consequently, this issue was already pled. Furthermore, plaintiff reiterates that this motion to dismiss is premature as plaintiff need only factually allege the elements of a federal violation and need not actually prove that violation at this stage. The analysis made by the defendant should be reserved for summary judgment rather than asserted against the pleadings. Regardless, plaintiff addresses the issues mentioned by defendant while maintaining that this argument should be had after motion for summary judgment.

The United States Supreme Court has held that cruel and unusual punishment claims apply to a detainee through the Fourteenth Amendment's guarantee of due process—however the claims remain under the analysis set forth by Eighth Amendment law.[18] The Fifth Circuit adopted the "same deliberate indifference standard for pretrial detainees as the one articulated by the Supreme Court in *Farmer v. Brennan*,[19] for convicted prisoners."[20] Moreover, a pretrial detainee's due process right is "at least as great as the Eighth Amendment protections available to a convicted prisoner."[21]

The Eighth Amendment is an evolving standard that has developed to encompass a wide

---

[18] Hare v. City of Corinth, Miss., 74 F.3d 633, 648 (5th Cir. 1996); Oladipupo v. Austin, 104 F. Supp. 2d 626, 633-34 (W.D. La. 2000). See also Bell v. Wolfish, 441 U.S. 520, (1979); Farmer v. Brennan, 511 U.S. 825 (1994).

[19] 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994),
[20] Sibley v. Lemaire, 184 F.3d 481, 489 (5th Cir.1999) quoting Hare, 74 F.3d 633; Scott v. Moore, 114 F.3d 51, 53 (5th Cir.1997); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir.1999); Brown v. Ridge, No. CIV.A. 04-0759-A, 2006 WL 1581167, at *16 (W.D. La. Jan. 19, 2006).
[21] City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).

range of treatment.[22] The provision extends to embody "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . ."[23] against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society."[24] Additionally, prison officials are imposed a duty to provide humane conditions of confinement, ensuring that inmates receive "adequate food, clothing, shelter, and medical care" and they must "take reasonable measures to guarantee the safety of the inmates."[25]

"A prison must provide for a prisoner's basic human needs—e/g/. food, clothing, shelter, medical care, and reasonable safety…."[26] This is imperative since prisoners are "restricted in their ability to fend for themselves."[27] It is "cruel and unusual punishment to hold convicted criminals in unsafe conditions."[28] Outside of prison, people can walk away from deplorable, inhumane conditions. They can step outside and breathe fresh air.

The United States Supreme Court has specifically stated that the constitutional standard for pretrial detainees is even easier to meet than that for prisoners. Indeed, the Supreme Court has stated that "we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."[29] The Court continued by explaining that a "person lawfully committed to pretrial detention has not been adjudged guilty of any crime"

---

[22] Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); Trop v. Dulles, 356 U.S. 86, 100, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958).
[23] Jackson v. Bishop, 404 F.2d 571, 579 (C.A.8 1968).
[24] Trop v. Dulles, supra, 356 U.S at 101.
[25] Hudson v. Palmer, 468 U.S. 517, 526–527, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).
[26] Helling v. McKinney, 509 U.S. 25, 31 (1993).
[27] Hare v. City of Corinth, Miss., 74 F.3d 633 (5th Cir. 1996).
[28] Youngberg v. Romeo, 457 U.S. 307, 315—316 (1982).
[29] Bell v. Wolfish, 441 U.S. 520, 535-36, 99 S. Ct. 1861, 1872, 60 L. Ed. 2d 447 (1979), citing Ingraham v. Wright, 430 U.S. 651, 671-672 n. 40, 674, 97 S.Ct. 1401, 1412-1413 n. 40, 1414, 51 L.Ed.2d 711 (1977); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 165-167, 186, 83 S.Ct. 554, 565-567, 576, 9 L.Ed.2d 644 (1963); Wong Wing v. United States, 163 U.S. 228, 237, 16 S.Ct. 977, 980, 41 L.Ed. 140 (1896).

and therefore should not be punished.[30]

Plaintiff's alleged clearly established rights under the cruel and unusual punishment case law. Plaintiff also specifically alleged deliberate indifference to the constitutionally unacceptable risk of violence faced by prisoners and staff at the Lafayette Parish Correctional Center. Regarding cruel and unusual punishment for failure to protect, a clearly established right exists in the law and applies to the present case:

> "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Cantu v. Jones,* 293 F.3d 839, 844 (5th Cir.2002) (citing *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). In particular, the Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates. *Id….* Prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. *See id.*
> ….
> A plaintiff can rely on circumstantial evidence indicating that the official must have known about the risk. *See Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."); *Farmer,* 511 U.S. at 842, 114 S.Ct. 1970 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[.]"). For example, the plaintiff can produce circumstantial evidence that the risk to inmate health or safety was so longstanding and pervasive that the official must have been aware of this danger. *See Farmer,* 511 U.S. at 842–43, 114 S.Ct. 1970.[31]

### 3. Official Capacity of City-Parish President Joey Durel

Plaintiff has sued the defendant in **both** his individual and official capacities. The claims against the defendant in his official capacity is simply "another way of alleging municipal liability"[32] for the office of the City-Parish President in conjunction with 42 U.S.C. § 1983. "A judgment in a § 1983 lawsuit against an official in his official capacity imposes liability against

---

[30] Id.
[31] Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003)
[32] Howell v. Town of Ball, No. 12–951, 2012 WL 3962387, at *4 (W.D.La. Sept. 4, 2012).

the entity he represents."[33] There is no basis for outright dismissing the claims as they are a valid and acceptable method of alleging liability on multiple defendants. Should this Honorable Court prefer an alternate pleading, plaintiff respectfully requests the opportunity to amend its Complaint. Plaintiff specifically pled:

7.
Prior to and up until July 28, 2015, the Defendants Sheriff Michael W. Neustrom; Director Rob Reardon; and Lester Joseph "Joey" Durel, Jr. jointly and in solido devised, adopted, implemented and carried out a custom, practice, or policy or policies and/or procedures which included:
(a) Operating a facility with hazardous maintenance deficiencies;
(b) Operating an understaffed and/or inadequately staffed facility;
(c) Operating the facility in a manner which is was not designed to be operated in;
(d) Negligent retention of staff;
(e) Failing to adequately train, supervise, monitor and discipline deputies in the need for and the manner in which to observe and supervise offenders;
(f) Failing to exercise reasonable care and failing to discover or fix the hazardous condition created by faulty locks at the correctional facility;
(g) Failing to keep the correctional facility cell in a reasonably safe condition;
(h) Failing to discover and failing to warn of the hazardous condition which deputy officer knew of and defendants knew of should have known of had they exercised reasonable care;
(i) Failing to regularly and properly conduct rounds to check on the well being of offenders; and
(j) Acting in deliberate indifference to the safety and security of the plaintiff in violation of his civil rights.[34]

**4. State Law Claims**

Plaintiff's state law claims are well-plead and there is no basis to dismiss them outright. This court has authority to hear the claims under supplemental jurisdiction. Furthermore, respondeat superior liability, or vicarious liability, is not precluded from all state law claims. Consequently, the state law claims and the issue of vicarious liability are not ripe for dismissal on the pleadings.

---

[33] Deshotels v. Village of Pine Prairie, No. 11–CV–2052, 2012 WL 1712358, at *4 (W.D.La. Apr. 13, 2012).
[34] See Plaintiff's Complaint.

### 5. Individual Capacity of Joey Durel

Plaintiff alleged numerous claims against Joey Durel in his individual capacity. Furthermore, plaintiff alleged specific examples, statistics, instances of deliberate indifference, and detailed facts in its claims. Plaintiff alleges that Joey Durel failed to protect plaintiff at the Lafayette Parish Correctional Center despite having information and knowledge of a long list of safety hazards, structural degradation, and long standing staffing crises. The following are excerpts from plaintiff's Complaint:

> 8.
> Defendants Sheriff Michael W. Neustrom and/or Director Rob Reardon **and/or Lester Joseph "Joey" Durel, Jr.** were on notice of the faulty locking mechanisms for over a decade, were deliberately indifferent to the safety and security hazardous presented by the faulty locking mechanism and failed to take reasonable action to correct the deficiencies.
> 9.
> Broken door locks were also well documented in incident reports, disciplinary citations and maintenance request which were written by staff and reviewed by defendants Sheriff Michael W. Neustrom and/or Director Rob Reardon and/or Lester Joseph "Joey" Durel, Jr.
> 10.
> Incidents involving lock tampering by prisoners occur regularly. The Lafayette Parish Sheriff's Office 2007 Annual Report disseminated to the public indicated that in 2006 there were 679 separate documented incidents involving prisoners tampering with locking mechanisms. Subsequent Annual Reports by the Lafayette Parish Sheriff's Office would not include any information regarding the frequency in which prisoners tampered with locks at the Lafayette Parish Correctional Center.
> 11.
> The Defendants Sheriff Michael W. Neustrom and/or Director Rob Reardon and/or Lester Joseph "Joey" Durel, Jr. failed to take reasonable steps to fix faulty locking mechanisms at the Lafayette Parish Correctional Center. Consequently, cell door locks in the jail housing units remained faulty and capable of manipulation by prisoners for years, permitting prisoners including maximum security prisoners to enter and exit their cells – at virtually any time of day or night – as they leased. The Defendants Sheriff Michael W. Neustrom and/or Director Rob Reardon and/or Lester Joseph "Joey" Durel, Jr. failed to fix the locks and failed to take other reasonable steps to control inmate movement or discourage this inmate behavior resulting in an increased fear by prisoners and a demoralize staff.
> 12.
> Defendants Michael W. Neustrom, Rob Reardon, Lester Joseph "Joey" Durel, Jr., Lafayette Consolidated Government and Kanan Daigle caused and/or materially contributed to the assault and battery upon Mr. Duplechain.

13.
Plaintiff avers that the said Defendants knowingly, wantonly, intentionally, and with gross disregard for the rights of Mr. Duplechain permitted a prosecution to commence wherein Mr. Duplechain was locked away inside a facility known to have defective lock mechanisms and high rates of violence in a housing area known to contain aggressive inmates after being placed on notice of his inability to adequately defend himself.

**6. Punitive Damages**

Again, plaintiff sued the defendant in **both** his individual and official capacities. Under 42 U.S.C. § 1983, when suits name municipal employees in both their individual and official capacities, there is a strict "distinction between personal and official capacity suits" for purposes of punitive damages.[35] The United States Supreme Court has recognized that punitive damages are recoverable against municipal employees **when sued in their individual capacities** pursuant to a § 1983 claim.[36] Therefore, defendant's contention that punitive damages are not recoverable is without merit.

**6. LCG Immunity**

The Eleventh Amendment immunity from suit is granted only to the state and does not apply to counties, cities, municipal corporations or lesser political subdivisions.[37] The courts have rejected the construction of the Eleventh Amendment in a way that would afford municipalities sovereign immunity.[38] Lafayette Consolidated Government is not afforded automatic sovereign immunity in the same context as the state of Louisiana. This is not an issue for the motion to dismiss stage.

---

[35] Givs v. City of Eunice, No. 6:05-CV-0788, 2006 WL 1831528, at *1 (W.D. La. June 29, 2006). See Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).
[36] Givs, at *1. See Smith v. Wade, 461 U.S. 30, 35, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (cited in Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir.2003).
[37] Schultz v. Greater New Orleans Expressway Comm'n, 250 F. Supp. 89, 92 (E.D. La. 1966)
[38] Owen v. City of Indep., Mo., 445 U.S. 622, 623, 100 S. Ct. 1398, 1401, 63 L. Ed. 2d 673 (1980)

## OPPOSITION TO MOTION TO STRIKE

A motion to strike the pleadings is an unfavored tactic which is well-established as an action that "should be sparingly used by the courts."[39] Indeed, "it is a drastic remedy to be resorted to only when required for the purposes of justice."[40] Furthermore, the Fifth Circuit has long held that the motion should rarely be granted and the sufficiency of the allegations should be determined on the merits.[41] The Federal Court for the Western District of Louisiana recently stated that, "the motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."[42]

The information cited in the motion to strike directly supports Plaintiff's claims that the entire jail is permeated by long-standing practices and customs that demonstrate a system which has violated the federal rights of inmates and will continue to do so in the future. Plaintiff has carefully provided details, cited specific examples of other cases, as well as statistics.

Defendant disputes the factual allegations in plaintiff's complaint as "irrelevant." A defendant cannot simply strike facts that it disputes. Disputed facts are to be weighed through trial. Moreover, the facts in plaintiff's Complaint are imperative to prove deliberate indifference on the part of the defendant, the official capacity liability of the defendant, as well as the individual capacity claims. Plaintiff must allege facts that demonstrate that the defendants knew of the safety risks as well as the violations of constitutional law. In order to demonstrate the long standing safety risks which amount to a policy or custom in the jail, plaintiff has detailed allegations to support its

---

[39] Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla., 306 F.2d 862, 868-69 (5th Cir. 1962)
[40] Id.
[41] Fed.R.Civ.P. 12(f). (citing Augustus v. Board of Public Instruction of Escambia County, Florida, 306 F.2d 862, 868 (5th Cir.1962)).
[42] Cargo v. Kansas City S. Ry. Co., No. CIV.A. 05-2010, 2011 WL 1234391, at *1 (W.D. La. Apr. 1, 2011), citing Augustus, 306 F.2d at 868 (citing Brown v. Williamson Tobacco Corp. v. U.S., 201 F.2d 819, 822 (6th Cir.1953).

claims. Defendant may dispute the details or consider them "irrelevant," but it cannot strike the very factual allegations which plaintiff relies upon to support its claims.

## CONCLUSION

Plaintiff has done far more than plead a "threadbare recital of the elements of a cause of action."[43] Plaintiff has detailed its allegations in order to meet the burden of alleging violations of federal and state claims. Dismissal on the pleadings is premature as the allegations have been sufficiently pled. Furthermore, disputed questions of fact cannot be decided on a motion to strike and plaintiff respectfully requests that this Honorable Court deny the defendant's motion to strike. Should the Court require any other clarifications, plaintiff respectfully requests the opportunity to amend its complaint rather than the draconian punishment of a dismissal of its claims.

Respectfully submitted:

**L. CLAYTON BURGESS, A P.L.C.**
605 West Congress Street
Lafayette, Louisiana 70502-52 7050150
Telephone: (337) 234-7573
Facsimile: (337) 233-3890


s/L. Clayton Burgess
**L. CLAYTON BURGESS** (22979)
Attorney for Plaintiff

---

[43] Iqbal, 556 U.S. at 678.