# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE   DIVISION

Duplechain                                          Civil Action No. 15-02433

versus                                              Judge Rebecca F. Doherty

Neustrom, et al                          Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Currently pending before the undersigned, on referral by the district judge, is a Motion To Dismiss, the plaintiff's complaint under Fed. R. Civ. P. 12(b)(6), And Motion To Strike, the plaintiff's claims and allegations under Fed. R. Civ. P. 12(f), [Rec. Doc. 63] filed by Michael W. Neustrom, individually and in his official capacity as the Sheriff of Lafayette Parish, Louisiana, Rob Reardon, individually and in his official capacity as the Lafayette Parish Sheriff's Office's Director of Corrections, and Hannah Girrens and Kanan Daigle, each individually and in their official capacities as Deputy Sheriffs for the Lafayette Parish Sheriff's Office (collectively referred to as "Defendants"), Plaintiff Steven Duplechain's Memorandum in Opposition [Rec. Doc. 65] and Defendants' Reply thereto [Rec. Doc.72]. For the reasons  below, it is recommended that the motion be granted in part and denied in part.

### I. Background

Plaintiff filed this action on September 28, 2015. *R. 1*. On October 20, 2015,

Plaintiff filed an amended complaint. *R. 3.* In response to the plaintiff's original and amended complaints, Defendants filed two motions to dismiss [Rec. Docs. 16 & 19]. On June 13, 2017, Plaintiff filed a second amended complaint (the "Amended Complaint"). [Rec. Doc. 42].[1] Defendants then moved to have their original motions withdrawn, and the motion was granted. [Rec. Doc. 47, 48, 57, 58]. Thereafter, Defendants filed the motions at bar. [Rec. Doc. 63].

According to the Amended Complaint, on July 28, 2015, pursuant to a Court Order, Deputy Girrens escorted Angela Marie Darby and Louise Segura Young to Plaintiff's home to collect Darby's "personal clothing and necessities" wherein Darby and Young burglarized and stole Plaintiff's belongings without Plaintiff's consent. Upon contacting the Lafayette Parish Sheriff's Office and reporting the burglary and theft, Deputy Girrens was dispatched to Plaintiff's residence. Upon arrival, Girrens arrested Plaintiff based on a bench warrant. Plaintiff alleges, Girrens failed to confirm the validity of the warrant, advise him of his rights upon arrest and did not allow him to immediately contact anyone nor obtain the paperwork related to the matter for which he was being arrested.

At the time Plaintiff was booked at the Lafayette Parish Correctional Center

---

[1] For purposes of this motion, Record Document 42, the second amended complaint, will be referred to as the "Amended Complaint."

("LPCC"), he alleges he informed the staff that he was unable to defend himself from attack by others because of "screws and plates in his body." He further alleges he was determined to be a "minimum security" custody level to be housed in "protective custody." Despite this classification, however, Plaintiff was assigned to 4E pod, a unit he alleges was classified as "special management" for maximum security offenders.

Plaintiff also alleges on July 29, 2015, two offenders, Tre'vin Bob and Deangelo Celestine, were successful in breaking through the lock on the door to his housing unit at the LPCC. Plaintiff pressed the emergency call button in his cell, but jail staff allegedly did not respond. Plaintiff alleges that several hours later, the two offenders attempted to reenter his cell and he was stabbed with a home-made metal weapon during a struggle that ensured.

Plaintiff contends that the LPCC report regarding the attack provided that Deputy Daigle witnessed Celestine "pop" the lock on his cell and enter the cell of Bob. Thereafter, both offenders walked toward Plaintiff's cell. Plaintiff alleges that Bob had a history of assaultive and violent behavior, including a July 24, 2015 attack upon another prisoner, Wesley Bienvenue. Plaintiff contends that no effort was made to locate the weapon used to stab him.

On July 30, 2015, Plaintiff appeared before the state court judge where he learned that the judge had previously ordered that he be permitted to pay a contempt

fee of $50.00 in lieu of serving jail sentence. Plaintiff alleges he was denied the right to pay the fee and was later released after serving two days in jail.

In their Motion, Defendants Neustrom, Reardon, Girrens and Daigle seek to have certain of the claims against them dismissed and to have certain allegations stricken from the Amended Complaint. In particular they move to dismiss (1) all individual capacity claims; (2) official capacity claims against Reardon, Deputy Girrens and Deputy Daigle; (3) 8th Amendment cruel and unusual punishment claims; (4) all claims of over crowdedness and under staffing; and (5) all claims for punitive damages. Finally, Defendants move to strike all irrelevant, redundant, immaterial and/or scandalous allegations. Defendants represent that they are not seeking dismissal of Plaintiff's failure-to-protect claims related to his alleged assault or Plaintiff's conditions-of-confinement claim related to the maintenance of the cell-door locks.[2] The Court will address the motions as follows.

## II. Law and Analysis

### A. The Motion To Strike

The Defendants seek to strike Paragraphs 101 through and including 127, and

_____

[2] The Court notes that the amended complaint in *J.H. versus Neustrom, et al*, Civil Case No. 6:15-cv-2525 is virtually identical to the Amended Complaint in this case, and that the Motion To Dismiss And Motion To Strike filed by the defendants in that case are markedly similar to the instant motions.

131 through and including 162 of the plaintiff's Amended Complaint under rule 12(f). *R. 42*.

### 1. Legal Standard For The Motion To Strike

Federal Rule of Civil Procedure 12(f) states: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The court may do so in response to a party's motion or on its own motion. Fed. R. Civ. P. 12(f). Deciding whether to strike all or a portion of a pleading lies within the court's discretion. *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1168–69 (5th Cir. 1979) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1382 at 807 (1969)). *See, also, Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007). A motion to strike under Rule 12(f) "is a drastic remedy to be resorted to only when required for the purposes of justice." *LaFrance v. New Orleans City*, 2017 WL 1037447, at *1 (E.D.La., 2017) (J. Vance) (citing *Augustus v. Bd. of Pub. Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962). Accordingly, Rule 12(f) motions to strike are viewed with disfavor, and are infrequently granted. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982); C. Wright & A. Miller, 5C Federal Practice & Procedure, Third Edition, § 1380.

Redundant matter consists of allegations that constitute a needless repetition

of other averments in the pleading. C. Wright & A. Miller, 5C Fed. Prac. & Proc. 3d § 1382. Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. *Id.* Immateriality is established by showing that the challenged allegations "can have no possible bearing upon the subject matter of the litigation." *Bayou Fleet Partnership, LLC v. St. Charles Parish*, 2011 WL 2680686, at *5 (E.D. La. July 8, 2011). Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question; while scandalous matter is that which improperly casts a derogatory light on someone, most typically on a party to the action. C. Wright & A. Miller, 5C Fed. Prac. & Proc. 3d § 1382. "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." *Id.* Therefore, a motion to strike should be granted only when "the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Eubanks v. Jordan*, 2006 WL 1476111, at *1 (W.D. La. May 26, 2006).

*2. Discussion*

The Defendants seek to have the allegations set forth in  Paragraphs 101 through and including 127, and 131 through and including 162 stricken on the basis

that they are either redundant, immaterial, impertinent, and/or scandalous. They argue that the allegations set forth in these paragraphs are scandalous because they "cast the Lafayette Parish Sheriff's Office, including former Sheriff Neustrom, in a derogatory light and are not essential to nor pertain [to] the factual allegations asserted by plaintiff." *R. 63, p.15.* This Court finds, however, that none of the information set forth in the amended complaint is sufficiently scandalous to require that it be stricken.

Defendants further object to the general allegations concerning inadequate staffing of the jail; the history of the jail; the jail's locks in 2007 (eight years prior to the incident on which this lawsuit is based); and, assertions of overcrowding, under staffing and lack of safety as being redundant, irrelevant and /or impertinent. Defendants argue that "[t]hese allegations have no essential or important relationship and do not pertain to the claim for relief or the defenses being pleaded by plaintiff and should be stricken." *R. 63, p. 16.*

While there is some redundancy in the Amended Complaint and in the paragraphs identified by Defendants, this Court finds that the paragraphs identified by Defendants set forth information that is sufficiently material to Plaintiff's claims that these paragraphs need not be stricken.

*B. Motion To Dismiss*

The Defendants seek to dismiss several claims set forth in the Amended

Complaint. More particularly, they seek dismissal of the individual capacity claims against Neustrom, Reardon, Girrens, and Daigle; the official capacity claims against Reardon, Girrens, and Daigle; the Eighth Amendment cruel and unusual punishment claims; and the punitive damages claims.

### 1. Legal Standard For Rule 12(b)(6) Motion

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is properly granted when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," *Id. at 555,* and "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* "While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id. See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly* at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US*

*Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009)

### 2. The Claims Against Deputies Girrens and Daigle

Plaintiff's original complaint asserted claims against Sheriff's Deputy Hannah Girrens and Sheriff's Deputy Kanan Daigle. *R. 1, p. 3*. The Amended Complaint does not include Girrens or Daigle in the list of defendants, *R. 42, pp. 1-3*. There are no allegations that either of them was personally involved in the incident in which the plaintiff was allegedly injured or that their actions caused the incident.[3]

A Section 1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation. *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012). There are no facts in the Amended Complaint relating the incident complained about to Girrens or Daigle—who are referenced only in the original complaint. Accordingly, this Court finds that the Amended Complaint does not state a plausible claim against Deputies Girrens or Daigle, either in their individual capacities or in their official capacities. Furthermore, Plaintiff does not object to the dismissal of his claims against Deputy Girrens and Deputy Daigle. *R.*

---

[3] The only factual allegations against Deputy Girrens are those involving Girrens escorting Darby and Young to Plaintiff's home pursuant to a court order and Girrens' arrest of Plaintiff pursuant to a warrant. Plaintiff's Amended Complaint makes no claim against Girrens under Section 1983 nor his state law claims of conversion and assault and battery. *R. 42, ¶¶ 9, 16, 163-168.*

*65, p. 4, n.* 1. Therefore, to the extent that any claim against Girrens and/or Daigle survived the amendment of the complaint, it is recommended that the motion to dismiss be granted and any such claim be dismissed.

### 3. The Punitive Damages Claim

Plaintiff's Amended Complaint seeks the imposition of punitive damages on "the individually named defendants" including "Michael Neustrom and/or Rob Reardon in their individual capacities" and makes no "claim for punitive damages against any defendant in their official capacities or against the entities themselves." *R. 42, ¶¶ 97-99.*

A Section 1983 claim against a Louisiana sheriff in his official capacity "is 'in essence' a suit against a municipality," *Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011), and the United States Supreme Court has held unequivocally that "[a] municipality is immune from liability for punitive damages in a § 1983 action." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270–71 (1981). "It is well settled that municipalities are not subject to the imposition of punitive damages under Section 1983." *Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984) (*en banc*); *Howell v. Town of Ball*, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012). Furthermore, "[i]t is equally well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Id. *4

(citing *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978)). Therefore, the plaintiff is barred from recovering punitive damages against a defendant acting in his official capacity. On the other hand, however, the United States Supreme Court has recognized that punitive damages are recoverable against municipal employees sued in their individual capacities. *Smith v. Wade*, 461 U.S. 30, 35 (1983).

Plaintiff concedes he does not seek punitive damages against any defendant in their official capacity and his only punitive damages claims are against Neustrom and Reardon in their individual capacities. Therefore, it is recommended that the motion to dismiss punitive damages should be denied as moot, leaving only Plaintiff's individual-capacity claims for punitive damages against Neustrom and Reardon as provided in the Amended Complaint.

### 4. The Eighth Amendment Claim

Plaintiff's fundamental claim is that the Defendants failed to protect him from harm while he was incarcerated. "[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 393 (5th Cir. 2000) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650

(5th Cir. 1996)).

Here, Plaintiff contends that "prior to discovery it is unknown if plaintiff was a pretrial detainee ... or a sentenced prisoner...." *R. 65, p. 8.* Thus, Plaintiff's position is that he does not know whether his claim arises under the Eighth Amendment or the Fourteenth Amendment because he does not know whether he was a pretrial detainee or a convicted prisoner when the alleged attack occurred. As such, he asserted alternative claims under both of those constitutional provisions.

Defendants argue that the Eighth Amendment claim should be dismissed because Plaintiff was a pretrial detainee at the relevant time. They assert that the public records of the 15th Judicial District Court support the conclusion that Plaintiff was a "pretrial detainee" and the Eighth Amendment claims should be dismissed.

The Court agrees that at the time Plaintiff's attorney filed the Amended Complaint he should have determined whether Plaintiff was a pretrial detainee or a convicted criminal on October 24, 2014. There are no factual allegations in the Amended Complaint, however, addressing this issue and the Plaintiff argues that discovery is needed in order to resolve the issue. Moreover, because this is a motion to dismiss the record contains no evidence establishing whether or not Plaintiff was convicted of a crime before the date of the incident.[4] Therefore, there is no basis on

---

[4] Even if Defendants had included such evidence in their motion to dismiss, the Court could not have considered it under Rule 12(b)(6).

which this Court can conclude that Plaintiff does not have an Eighth Amendment claim. Accordingly, it is recommended that, to the extent Defendants seek dismissal of the Eighth Amendment claim, their motion to dismiss should be denied.

### 5. The Official Capacity Claims

Plaintiff sued Neustrom and Reardon in their official capacities and also in their individual capacities. In the pending motion, the Defendants argue that the official-capacity claims against Reardon should be dismissed but they do not argue that the official-capacity claims against Neustrom should be dismissed.

Plaintiff contends that Neustrom and Reardon created and maintained customs or practices that resulted in Plaintiff's injuries and the deprivation of his constitutional rights due to their failure to protect prisoners in the jail, overcrowding and under staffing in the jail, the unsafe lay-out of the jail, and the faulty locking mechanisms in the jail. *R. 42.* Plaintiff further contends that Neustrom, and in the alternative, Reardon were policymakers. Specifically, he alleges they were the "functional final policy makers at LPCC", with Neustrom being the sheriff and Reardon being the director of the jail. *R. 42, ¶ 77.* Under Louisiana law, however, the sheriff is the chief law enforcement officer in the parish and, consequently, is the final policymaker. *Craig v. St. Martin Parish Sheriff*, 861 F.Supp. 1290, 1301 (W.D. La. 1994) *citing* La. Const. Art. 5, § 27 ("[The sheriff] shall be the chief law enforcement officer in the

parish.") and *citing* La. R.S. 33:5539 [formerly La. R.S. 33:1435] ("Each sheriff shall be keeper of the public jail of his parish and shall preserve the peace and apprehend public offenders.")).    This Court therefore finds that Neustrom was the final policymaker for the Lafayette Parish Correctional Center at all relevant times.

A judgment rendered in a Section 1983 lawsuit against an official in his official capacity imposes liability against the entity that the individual represents. *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015). Therefore, it is "well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Howell*, 2012 WL 3962387, at *4 (citing *Monell*, 436 U.S. 658). In this case, Neustrom—the Lafayette Parish sheriff—is a defendant in the litigation. Therefore, the official-capacity claim against Reardon, employed as the director of the LPCC, is actually a claim against Neustrom. In similar circumstances, courts in this circuit have found it is appropriate to dismiss official-capacity claims. See, e.g., *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261(5th Cir. 1996) (dismissing the Judge and Commissioners of the County in their official

capacities as being duplicative of the claims against the County); *J.H. v. Neustrom*, 2016 WL 7638309, at *6 (W.D.La., 2016).

In light of the foregoing jurisprudence, this Court finds that Plaintiff's claims against Reardon in his official capacity are duplicative of the claims asserted against Sheriff Neustrom and should therefore be dismissed.

*6. The Individual Capacity Claims*

Defendants argue that the individual-capacity claims against Neustrom and Reardon should be dismissed because they are entitled to qualified immunity. Personal involvement is an essential element of a civil rights cause of action in an individual capacity claim. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir.1992) (plaintiff bringing a section 1983 action must "specify the personal involvement of each defendant"). In that respect, section 1983 does not create vicarious or respondeat superior liability for the wrongdoing of others. *Alton v. Texas A & M Univ.*, 168 F.3d 196, 200 (5th Cir.1999) ("Supervisory officers ... cannot be held liable under § 1983 for the actions of subordinates ... on any theory of vicarious liability."). Because vicarious liability is inapplicable in a section 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Supervisory officials can be held liable only if the plaintiff demonstrates either

one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir.1987); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir.1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.' " *Thompkins*, 828 F.2d at 304; *see also Porter v. Epps*, 659 F.3d 440, 446 (5th Cir.2011) ("A supervisory official may be held liable [under § 1983] ... if ... he implements unconstitutional policies that causally result in the constitutional injury").

The Amended Complaint lacks any factual allegations against Neustrom or Reardon that identify any act or omission that might support a finding of their *personal involvement* in the incident in which the plaintiff was allegedly injured. As to the issue of Neustrom or Reardon's supervisory liability, Plaintiff alleges that the policies—under staffing in the jail, overcrowding in the jail, failing to repair the cell locks, and improperly using the jail facility—were so deficient that those policies themselves deprived Plaintiff of constitutional protections. To establish supervisor

liability in such a situation, it is necessary to establish that the supervisor acted with deliberate indifference to the plaintiff's constitutionally protected rights. *Alton v. Texas A & M*, 168 F.3d at 200. Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Porter v. Epps*, 659 F.3d at 447.

As provided in the foregoing, Plaintiff contends that either Reardon or Neustrom was the Lafayette Parish Sheriff's Office official who created and implemented policies governing the Lafayette Parish Correctional Center, including: 1) that Neustrom and/or Reardon had actual knowledge of the jail's faulty locks, overcrowding, under staffing, and improper use of the physical jail facility; 2) that these conditions were causally related to the alleged attack on the Plaintiff; and 3) that Neustrom and/or Reardon failed to take any action to correct the problems at the jail. Plaintiff maintains that Sheriff Neustrom and/or Director Reardon were deliberately indifferent to these jail conditions which created a substantial risk of harm to Plaintiff. *R. 65, p. 5*.

In light of the aforesaid jurisprudence establishing Sheriff Neustrom as the final policy maker, Plaintiff's allegations are sufficient to state a plausible claim against Sheriff Neustrom in his individual capacity as the policy maker for the jail. As to Director Reardon, however, Plaintiff alleges that Reardon was "an employee

of the Lafayette Parish Sheriff's Office." *R. 1, ¶* . Plaintiff's claim against Reardon rests on a theory of vicarious liability or respondeat superior. The doctrine of respondeat superior does not apply to Section 1983 claims, so supervisory officials may not be held liable based on the conduct of their subordinates. *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir.1999). The undersigned finds that Plaintiff has failed to state a plausible individual-capacity claim against Reardon in his supervisory capacity.

Defendants argue that Neustrom and Reardon are entitled to qualified immunity with regard to the individual-capacity claims asserted against them. This Court's finding that Plaintiff has not stated a plausible individual-capacity claim against Reardon renders the argument that he is entitled to qualified immunity as moot. That defense, however, must be considered with regard to Neustrom. "Qualified immunity questions should be resolved 'at the earliest possible stage in the litigation.' " *Porter*, 659 F.3d at 445 (considering qualified immunity in a motion for judgment as a matter of law). Therefore, it is appropriate that this issue be taken up in connection with the pending motion to dismiss.

"Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Thus, it protects "all but the plainly incompetent or those who

knowingly violate the law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)

Once a defendant asserts the qualified immunity defense, "[t]he plaintiff bears the

burden of negating qualified immunity." *Brown v. Callahan*, 623 F.3d 249, 253 (5th

Cir. 2010). To overcome qualified immunity, the plaintiff must show that the official

violated a statutory or constitutional right, and that the right was clearly established

at the time of the challenged conduct. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th

Cir. 2016).   Despite this burden-shifting, all reasonable inferences must be drawn in

the plaintiff's favor. *Brown*, 623 F.3d at 253.

   "[A] plaintiff seeking to overcome qualified immunity must plead specific facts

that both allow the court to draw the reasonable inference that the defendant is liable

for the harm  he has alleged and that defeat a qualified immunity defense with equal

specificity." *Lincoln v. Barnes*, --- F.3d ----, 2017 WL 1406484, at *2 (5th Cir. 2017).

While "the terms 'gross negligence' and 'deliberate indifference' are sometimes used

interchangeably, understood properly, 'the former is a 'heightened degree of

negligence,' [while] the latter is a 'lesser form of intent.' " *Whitley*, 726 F.3d at 641.

Plaintiff in this case cannot meet that standard because he has not demonstrated that

Neustrom was deliberately indifferent to Plaintiff's safety during his incarceration. *Id.*

   In order to have been acting with deliberate indifference, Neustrom must have

known of and disregarded an excessive risk to the plaintiff's health or safety. *Id.*

Neustrom's actual knowledge is critical to the inquiry because a failure to alleviate a significant risk that he should have perceived but did not perceive does not rise to the level of deliberate indifference. *Id.* A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

Many of the allegations set forth in the Amended Complaint are conclusory in nature, some of them are significantly attenuated in time from the incident underlying this lawsuit, and there are few facts, if any, supporting Plaintiff's allegation that Neustrom was deliberately indifferent to his safety. This Court finds that the allegations in Plaintiff's Amended Complaint fail to establish that Neustrom is not entitled to qualified immunity with regard to the claims asserted against him in his individual capacity. As such, the Court will recommend that the Defendant's motion be granted with regard to those claims, and the individual-capacity claims against Neustrom be dismissed.

### III. Conclusion

For the reasons explained above, this Court recommends that the Motion To Dismiss And Motion To Strike [Rec. Doc. 63], filed on behalf of Defendants Neustrom, Reardon, Girrens and Daigle, be GRANTED IN PART and DENIED IN PART, in that:

1) the Motion To Strike Paragraphs 101 through and including 127, and 131 through and including 162 be **DENIED**;

2) the Motion To Dismiss be **GRANTED** with regard to any claims asserted in the Amended Complaint against defendants Girrens or Daigle and those claims be dismissed without prejudice;

3) the Motion To Dismiss Plaintiff's punitive damages claims be **GRANTED** with regard to Plaintiff's official-capacity claims against Neustrom and Reardon and those claims be dismissed with prejudice;

4) the Motion To Dismiss be **GRANTED** with regard to the official-capacity claims against Reardon and those claims be dismissed without prejudice;

5) the Motion To Dismiss the individual-capacity claims against Reardon be **DENIED AS MOOT** and those claims be dismissed without prejudice;

6) the Motion To Dismiss the individual-capacity claims against Neustrom be **GRANTED** and those claims be dismissed without prejudice; and

7) the Motion To Dismiss be **DENIED** in all other respects.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** this 2nd day of May, 2017 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE